UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALAN NAPOLI,

                                 Plaintiff,

v.

DELUXE CORPORATION, and DELUXE SMALL
BUSINESS SALES, INC.,

                                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
17-CV-6957 (SJF) (SIL)

FEUERSTEIN, District Judge:

Plaintiff Alan Napoli ("Plaintiff" or "Napoli") commenced this diversity action alleging a single claim of breach of contract against defendants Deluxe Corporation and Deluxe Small Business Sales, Inc. ("Deluxe SBS") (collectively, "Defendants"). Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Motion, Docket Entry ("DE") [23]. Plaintiff opposes the motion and has cross-moved for judgment on the pleadings in his favor on his breach of contract claim. *See* Cross-Motion, DE [26]; Plaintiff's Memorandum of Law in Opposition ("Pl. Opp.) at 10, DE [28]. For the reasons set forth below, Defendants' motion is granted and Plaintiff's cross-motion is denied.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the Complaint ("Compl."), DE [1], and are assumed to be true for purposes of this motion. Consideration of additional materials outside the complaint is permitted in limited circumstances, such as when documents are "integral" to the complaint such that "the complaint relies heavily upon its terms and effect." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153

(2d Cir. 2002)). Even where a document is integral to the complaint, it may only be considered if it is "clear on the record that no dispute exists regarding authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citation omitted). The complaint references an Employment Agreement (the "Agreement") that is purportedly included as an attachment. Compl. ¶7. Although the Agreement was not, in fact, attached to the complaint as filed, Deluxe submitted it as an attachment to its Answer. *See* Answer, Ex. A, DE [17-1]. As the Agreement is integral to the allegations of the complaint and no party has disputed the accuracy or authenticity of the Agreement attached to the Answer, that document has been considered by the Court in making the determination herein.

Additionally, the Agreement refers to a Severance Support Plan (the "Plan"), a copy of which was attached to Defendants' answer. *See* Answer, Ex. B, DE [17-2]. It is a Human Resources Policy that is not signed or dated and indicates on its face that it was last modified "on/by: April 2016." As will be discussed at length below, the parties dispute the import of this document and its role in this controversy, but do not appear to dispute that it is the Plan referred to in the Agreement.

Turning to the factual allegations, Plaintiff alleges that Deluxe Corporation and its subsidiary, Deluxe SBS, are Minnesota corporations. Compl. ¶¶ 3-4. Napoli was employed by Deluxe from June 1, 2016 until March 31, 2017. *Id.* ¶ 6. The parties entered into the Agreement, which was on Deluxe letterhead and was signed by Napoli on May 20, 2016, set Napoli's base compensation at an annual equivalent of $100,000. *Id.* ¶¶7, 9. The Agreement contains a clause entitled "Severance Support Plan" which states in pertinent part that:

> [i]n the event of the involuntary termination of your employment by the Company, other than termination by the Company "for cause"

2

> (defined below) and upon providing us with an unrescinded release, you will be eligible to receive severance per Deluxe's current severance support plan policy, but at least an amount equal to 9 months of base draw, less applicable taxes and other required withholdings and any amount you may owe to the Company, payable in the manner an at the time you received your draw payments as an employee of the Company. . .

Agreement at 1-2. The clause further states that "while Deluxe reserves the right to change our severance support plan policy at any time, your severance benefits will be no less than those provided herein." *Id.* at 2. The Agreement defines "For Cause" as "(i) theft, dishonesty, embezzlement or fraud by you, (ii) gross insubordination, (iii) serious misconduct, (iv) a false statement on either of your resume or employment application, or (v) conviction of any felony or of any crime involving moral turpitude, as well as any other conduct which would constitute cause at law." *Id.* Should Napoli "voluntarily terminate or resign," he would be entitled only to outstanding salary and earned but unpaid commissions. *Id.*

On or about March 31, 2017, Napoli's employment was terminated by Deluxe. Compl. ¶10. He alleges that he did not voluntarily resign, nor was he terminated "for cause." *Id.* ¶¶11-12. After his employment was terminated, Plaintiff demanded payment of nine (9) months' severance pay or approximately $75,000 pursuant to the Agreement. *Id.* ¶14. Deluxe has not paid the severance requested by Napoli and thus has not complied with the terms of the Agreement. *Id.* ¶¶15-16.

In their answer, Defendants have asserted counterclaims for conversion and unjust enrichment. The following allegations relevant to the issues on the current motions are taken from Defendants' counterclaims.[1] On or about June 1, 2016, Deluxe SBS purchased the assets of L.A.M. Enterprises, Inc. ("LAM"). Counterclaims, ¶1. Prior to the sale, Plaintiff, who "was

---

[1] The counterclaims themselves are not implicated by the current motions.

or is an officer of LAM," accepted a position with Deluxe SBS as a commissioned salesperson. *Id.* ¶¶ 2-3. On or about March 17, 2017, Deluxe SBS sold the assets previously owned by LAM to Safeguard Marketing Solutions USA, Inc. ("Safeguard"). *Id.* ¶ 4. At about the same time, Safeguard offered Plaintiff a position as a commissioned salesperson, an offer accepted by Plaintiff. *Id.* ¶¶ 5, 10. In his answer, Plaintiff denies knowledge sufficient to form a belief as to the allegation regarding the sale of assets to Safeguard, Answer to Counterclaim ¶ 4, DE [30], and admits that he was offered and accepted a position with Safeguard. *Id.* ¶¶ 3, 10.

### B. Procedural History

Plaintiff states a single claim for breach of contract for failure to pay him severance pursuant to the Agreement. Deluxe has moved for dismissal, arguing that based on the terms of the Plan, Plaintiff is not eligible for severance pay. Deluxe further argues that the complaint fails to state a claim for breach of contract as it does not adequately allege: (1) what provision was breached; (2) that Napoli performed under the contract; and (3) that a condition precedent has been satisfied. Plaintiff has cross-moved for judgment on the pleadings on his breach of contract claim.

## II. LEGAL STANDARDS

### A. Judgment on the Pleadings

Pursuant to Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). Motions pursuant to Rule 12(c) are decided using "the familiar standard applicable to a Rule 12(b)(6) motion." *Polanco v. NCO Portfolio Mgmt., Inc.* 930 F. Supp. 2d 547, 549 (S.D.N.Y. 2013) (citing *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010)). Therefore, to survive a motion pursuant to Rule 12(c), the complaint must contain "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678 (citing *Twombly*, 550 U.S. at 557).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S at 679. A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-679; *see also Twombly*, 550 U.S. at 555 (holding that a "formulaic recitation of cause of action's elements will not do... Factual allegations must be enough to raise a right to relief above the speculative level" (citations omitted)).

In deciding a motion for judgment on the pleadings, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks and citation omitted). As discussed above, the Court has considered both the Agreement and the Plan in determining the motions.

## B. Breach of Contract

To state a claim for breach of contract New York law,[2] a plaintiff must show: "(1) the existence of a contract between itself and [the] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by [the] defendant; and (4) damages to the plaintiff caused by [the] defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir.2011) (citations omitted). "While these elements need not be separately pleaded, failure to allege them will result in dismissal." *James v. Countrywide Fin. Corp.*, No. 10 Civ. 4953, 2012 WL 359922, at *22 (E.D.N.Y. Feb. 22, 2012) (citation and internal quotation marks omitted). Deluxe argues that Plaintiff is not entitled to relief under the parties' Agreement, and further contends that the complaint fails to state a claim for breach of contract.

## III. DISCUSSION

### A. Ambiguity in the Agreement

The parties do not dispute that the Agreement refers to the Plan, but they have a fundamental disagreement about which document controls the specific issue of Plaintiff's entitlement to severance compensation. According to Defendants, the Plan is incorporated into the signed Agreement and is controlling on this point. The Plan states that employees are ineligible for severance in several circumstances including, *inter alia*, where they "are working in a business or subsidiary that is sold to another company or a functional group this is outsourced and are offered a position with the purchaser or the outsourced service provider." Plan at 2. Defendants claim that Napoli's termination occurred because Deluxe SBS sold its

---

[2] Since there is no choice of law provision in the Agreement and the parties apparently agree that New York law controls, the Court will apply it. *See, e.g., Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) (noting that "where the parties agree that New York law controls, this is sufficient to establish choice of law").

6

business or subsidiary to Safeguard, and that Napoli went to work for Safeguard after the sale. Accordingly, Napoli is ineligible for severance under the express terms of the Plan.

Plaintiff acknowledges the reference to the Plan in the Agreement, but contends in his opposition, that in the Agreement, "Defendants added, at the specific request of Plaintiff, a provision that guaranteed him 9 months['] severance pay. Pl. Opp. at 7. The severance plan described in the Agreement appears to state the same benefit provided in the Plan to Grade EX, XX, S, TV and Sales Grades SS-ST: at least 9 months of base pay, plus up to an additional 3 months if unemployed at the end of 9 months, or the difference in pay for 3 months if employed at a lower rate of pay. At the end of the paragraph in the Agreement that describes the benefit, the following sentence appears: "Note, while Deluxe reserves the right to change our severance support plan policy at any time, your severance benefits will be no less than those provided for herein." Agreement, p. 2. Plaintiff argues that this language "expressly and clearly guarantees Plaintiff 9 months of severance, regardless of the severance support plan." Pl. Opp. at 1.

"[A] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 646, 912 N.E.2d 43, 884 N.Y.S.2d 211 (2009). A written agreement that is "complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* (internal quotation marks and citation omitted). "Under New York law, a contract is ambiguous when its language is susceptible to multiple reasonable interpretations." *Int'l Bus. Machines Corp. v. United Microelectronics Corp.*, 764 F. App'x 9, 16 (2d Cir. 2019) (summary order). In interpreting a contract, "words and phrases should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Process Am., Inc. v. Cynergy Holdings, LLC,* 839 F.3d 125, 133 (2d Cir. 2016)

7

(internal quotation marks and ellipsis omitted). "An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks and alterations omitted).

The Agreement is unambiguous as it is susceptible to an interpretation that gives meaning to the disputed language. The Agreement clearly states that in the event of his involuntary termination by Defendants, and upon providing an unrescinded release, Plaintiff would be "*eligible* to receive severance per Deluxe's current severance plan policy . . ." Agreement at 2 (emphasis supplied). Accordingly, the Agreement refers to the terms of the Plan for the criteria for determining whether Plaintiff is entitled to collect severance pay. The "guarantee" language relied upon by Plaintiff states that "your severance *benefits* will be no less than those provided for herein," Agreement, p. 2 (emphasis supplied), and thus pertains to the amount of his benefit, not his eligibility to collect it.

Defendants argue that Plaintiff is ineligible based on the Plan requirements, but their argument is rooted in the facts surrounding Deluxe SBS's transfer of assets to Safeguard and Napoli's acceptance of employment with that entity, facts that are not pled in the complaint. It may well be that the facts as discovered may support a determination on summary judgment that Napoli is ineligible to collect severance, but at this juncture, factual issues exist that are improper for resolution on a motion to dismiss.

## B. Adequacy of Breach of Contract Allegations

Defendants claim that the complaint fails to adequately plead a breach of contract action because it does not allege Plaintiff's own performance and it fails to identify the contract terms that were allegedly breached.

The Agreement is an offer of employment accepted by Plaintiff upon his signing and returning the document. It states, without elaboration, that the position is "Sales" with responsibilities that "will include the solicitation of new customers and management of existing customer of [LAM]." No other job responsibilities are discussed, nor does the Agreement contain any performance parameters relating to Plaintiff's success in the position. In the complaint, Plaintiff alleges that he was employed by Defendants from on or about June 1, 2015 until on or about March 31, 2017. Compl. ¶6. In light of the lack of any specific detail in the Agreement regarding Plaintiff's duties and responsibilities, Plaintiff's allegation of actual employment is sufficient and plausibly alleges that he performed under the contract.

Regarding the terms allegedly breached, again, Plaintiff asserts that the Agreement contains express language in addition to, and controlling over, the language in the Plan. He has clearly indicated that Defendants have breached their "guarantee" to provide him with severance pay notwithstanding the language in the Plan.

## C. Condition Precedent

Defendants argue that Plaintiff has failed to allege that he complied with a condition precedent necessary to trigger his eligibility for the severance pay plan. The satisfaction of a condition precedent "must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 660 N.E.2d 415, 636 N.Y.S.2d 734 (1995) (internal quotation and citation omitted). Conditions may be express or implied. "Express conditions are those agreed to and imposed by the parties themselves. Implied or constructive conditions are those imposed by law to do justice." *Id.* (internal quotation marks and citations omitted). Express conditions must be performed as set forth while "substantial compliance is sufficient" to satisfy implied conditions. *Id.* "However, if the

condition precedent could not be fulfilled because the defendant prevented or hindered its occurrence, defendant must still perform." *CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*, No. 03 CIV. 7936, 2006 WL 1379596, at *4 (S.D.N.Y. May 18, 2006).

Rule 9 of the Federal Rules of Civil Procedure provides that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity." FED. R. CIV. P. 9. The Agreement states in pertinent part that "[i]n the event of the involuntary termination of your employment . . . and upon providing us with an unrescinded release, you will be eligible to receive severance . . . ." Agreement at 1-2. Defendants contend that since there is no allegation in the complaint that Plaintiff tendered a release, he has not satisfied the condition precedent to their performance under the contract.

Here, the Agreement lays out a clear sequence of events necessary for eligibility to severance: (1) in the event of an involuntary termination of Plaintiff's employment; (2) "and upon providing us with an unrescinded release," (3) Plaintiff will be eligible to receive severance per the Plan. Plaintiff's interpretation of this clause turns it on its head as demonstrated by his statement that "[i]f Defendants agreed to pay the severance that was guaranteed, and presented Plaintiff a reasonable release, he would have signed it." Pl. Opp. at 9. The language used in the Agreement is plain – Plaintiff's eligibility would be determined "upon providing" the release, not before. As the complaint is silent on the question of whether Napoli satisfied the condition precedent by providing Defendants with a release, it fails to comply with Rule 9.

Not only did Plaintiff fail to plead satisfaction of the condition precedent, his opposition papers confirm that he never provided a release. Instead, he argues that "(a) Plaintiff was never

10

presented or asked to sign a general release, and (b) Defendants denied Plaintiff severance ... As such, there was no basis for Plaintiff to receive, or sign a release." Pl. Opp. at 9. He contends that the Agreement expressly states that, in order to *receive* severance, execution of a release was required. This is not, however, the language in the Agreement, which clearly states that provision of the release preceded his eligibility to receive severance pursuant to the Plan. While Plaintiff suggests that providing a release would be premature absent an offer of the benefits, courts have routinely upheld conditions precedent requiring execution of a release. *See, e.g., Kaul v. Hanover Direct, Inc.*, 148 F. App'x 7, 9 (2d Cir. 2005) (summary order) (noting that plaintiff "forfeited his right to the severance package by failing to execute a general release in favor of [the employer] as required as a condition precedent to receiving severance benefits"); *O'Grady v. BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 503 (S.D.N.Y. 2015) (granting dismissal where terminated employee failed to satisfy condition precedent in an agreement that promised severance "provided that [he] execute[s] a valid and irrevocable release agreement in a form acceptable to the Company"). New York law provides that a condition precedent may be "deemed satisfied or excused if the party relying on the non-occurrence of the condition precedent was instrumental in preventing or frustrating its occurrence." *Mullinex v. Mt. Sinai Sch. of Med.*, No. 12-CV-8659, 2015 WL 328050, at *3 (S.D.N.Y. Jan. 23, 2015) (internal quotation marks and citation omitted). This doctrine is not implicated here as there is nothing in either the complaint or in Plaintiff's papers to suggest that Defendants had a duty to supply him with a release or that they did anything to prevent or hinder him from executing one and providing it to them. As Plaintiff failed to allege his satisfaction of the condition precedent, his complaint must be dismissed.

**D. Leave to Amend**

In his opposition, Plaintiff requests leave to amend should the complaint be dismissed for failure to assert his own performance or to identify the specific contract provision breached, but does not request leave as to his failure to allege compliance with a condition precedent. As he has made clear in his opposition papers, Plaintiff did not provide Defendants with a release and thus he cannot cure the deficiency merely by repleading. *See O'Grady*, 111 F. Supp. 3d at 504 (denying leave to amend where the "lone fact" offered by plaintiff was that his employer never provided him with a release). Accordingly, as amendment would be futile, leave to amend is denied.

**E. Counterclaims**

Defendants' counterclaims for conversion and unjust enrichment are not addressed in the parties' motions. As these counterclaims do not arise out of the occurrence or transaction that is the subject of Plaintiff's claim, they are permissive counterclaims brought pursuant to Rule 13(b) of the Federal Rules of Civil Procedure. "A permissive counterclaim that does not otherwise carry an independent basis for subject matter jurisdiction, *i.e.* federal question or diversity, must meet § 1367's criteria for supplemental jurisdiction." *Romero v. Bestcare, Inc.*, No. CV 15-7397, 2018 WL 1702001, at *11 (E.D.N.Y. Feb. 28, 2018), *adopted by*, 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018).

It is apparent that Defendants' counterclaims lack independent bases for subject matter jurisdiction in federal court. No federal question is raised, and although the parties are diverse, the amount in controversy does not approach the threshold of $75,000 necessary for diversity jurisdiction. Absent an independent basis for jurisdiction, the Court may, if appropriate, exercise supplemental jurisdiction if the claims "are so related to claims in the action within [the court's]

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. §1367(a); *see also Nicholsen v. Feeding Tree Style, Inc.*, No. 12 CIV. 6236, 2014 WL 476355, at *2 (S.D.N.Y. Feb. 6, 2014) (noting that that a permissive counterclaim may fall within the court's supplemental jurisdiction as "it is possible for a claim and a counterclaim to arise out of two different transactions or occurrences, yet still share a common nucleus of operative fact"). Even if the Court were to determine that it had supplemental jurisdiction over Defendants' counterclaims, §1367 provides that a court may, in its discretion, decline to exercise that jurisdiction for several reasons, including where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). Before making this determination, however, the Court will afford the parties an opportunity to address the issue.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [23] is granted, and Plaintiff's cross-motion for judgment [26] is denied. Defendants shall, **no later than July 1, 2019**, electronically file a letter no longer than four (4) pages in length regarding the Court's jurisdiction over the counterclaims; Plaintiff may respond, subject to the same page limitation, **no later than July 8, 2019**.

**SO ORDERED.**

/s/
Sandra J. Feuerstein
United States District Judge

Dated: June 21, 2019
Central Islip, New York